1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MOJARRO, | Case No. 1:15-cv-1692-BAM |
| Plaintiff, | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jose Mojarro ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1]      Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 8, 10).

**FACTS AND PRIOR PROCEEDINGS**

On January 31, 2011, Plaintiff filed his current applications for DIB and SSI alleging disability beginning on October 24, 2005.  AR 80-95.[2]  Plaintiff's applications were denied initially and on reconsideration. AR 31-39.  Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Catherine Lazuran held a hearing on March 4, 2014, and issued an order denying benefits on June 11, 2014.  AR 13-25.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. AR 6-10.  This appeal followed.

**Plaintiff's Testimony**

The ALJ held a video hearing on March 4, 2014.  AR 377.  Plaintiff appeared and testified in Bakersfield, California. AR 376-423.  He was represented by an attorney. AR 28.  Impartial Medical Expert Rueben Beezy, M.D, and Vocational Expert ("VE") Judith Najarian also testified. AR 64.

At the time of the hearing, Plaintiff was 45 years old with a driver's license, a high school education, and vocational training in upholstery. AR 380-81.  Plaintiff last worked in 2005 at a maintenance job where he drove a forklift, serviced the mill, put product into tanks, and supervised two work crews. AR 381-82.  Plaintiff stopped working in 2005 when he fell from a "50 foot tank" onto a set of metal stairs causing injury to his back, hand, and leg.  After his injury, Plaintiff received a Workers' Compensation settlement of $170,000, four years prior to the hearing.  AR 383-84; 398. Plaintiff testified that the majority of his allegedly disabling injuries stem from this workplace injury.

When asked about his medical treatment, Plaintiff testified that he wore a back brace and took Vicodin for neck and back pain.  AR 400-405.  Plaintiff also takes medications for diabetes and depression.  AR 405-407. His medications caused dizziness and blurry vision and as a result his doctor recommended that he get glasses. AR 384-85.  Plaintiff denied being hospitalized or visiting an emergency room since his injury in 2005. AR 385.  Although his doctors have recommended surgery, Plaintiff has not had any surgery since a hand procedure in 2006. AR 387-88, 399.  Plaintiff testified that he had poor hearing but could use his right ear to hear over the telephone and could

---

[2]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

understand what people were saying if he read their lips.  AR 389-90.  Plaintiff stated that his left hand was better than his right hand.  AR 390-91.  Although Plaintiff was stabbed in his left hand in 1994 or 1995, he was able to work using his left hand for many years. AR 391. Plaintiff testified that on his right hand, he is unable to move his middle and fourth finger.  AR 392.

When asked about his daily activities, Plaintiff asserted he was unable to exercise or walk more than 20 feet; his wife helped him dress and bathe and she handled housework and childcare. AR 391-93.  He helps his wife with the shopping and occasionally visited with friends, but he denied having hobbies or doing anything besides watching television. AR 392, 394-96, 403, 407. Plaintiff explained that when he watched television, he sat in a "Lazy Boy" chair and elevated his legs. AR 403-04.   Plaintiff mostly isolates himself and spends about twenty-two hours in his room in a twenty-four hour period. AR 407.

Medical expert, Dr. Beezy also testified at the hearing. AR 408-414.  Dr. Beezy testified that Plaintiff's case file was missing several Workers' Compensation records from Plaintiff's accident in 2005. AR 409. However, based on the existing records in Plaintiff's file Dr. Beezy testified that Plaintiff suffered from diabetes; neck and shoulder pain; mild degenerative joint disease; instances of foot, knee, elbow, and ankle pain; right hand surgery; bilateral hearing loss; chest pain; obesity; hypertension; hyperlipidemia; fatty liver; depression, and anxiety. AR 409-10.  Dr. Beezy opined that Plaintiff did not have an impairment that met or equaled a listing.  AR 410.  He further opined, based on Plaintiff's subjective testimony that Plaintiff could perform less than sedentary work and would have trouble climbing; he would be limited in stooping, crouching, and crawling; he would be markedly limited in handling with his right hand and reaching with his right shoulder; he should avoid heights; and he would be limited in his ability to sustain full-time work. AR 410-11.  In so testifying, Dr. Beezy admitted he was basing his opinion on Plaintiff's subjective statements at the hearing.  AR 411.

Lastly, the ALJ asked the vocational expert hypothetical questions based upon the medical record and the ALJ's subsequent RFC finding.  After asking the VE to contemplate an individual of the same age, education, and work background as Plaintiff, the VE determined that Plaintiff could perform work as an usher, counter clerk, and dealer accounts investigator.  AR 420.

///

**Medical Record**

The entire medical record was reviewed by the Court. AR 1-423. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-25. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 24, 2005. AR 15. Further, the ALJ identified lumbar and cervical degenerative disc disease; right hand and elbow injury and history of surgery; obesity and fatty liver; hearing loss; and diabetes as severe impairments. AR 16-18. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 18.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work including that Plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently; stand, walk or sit for 6 hours in an 8-hour workday. Plaintiff is also limited to occasional, bending, stooping, pushing, pulling, crouching, crawling and climbing. He can also occasionally reach, handle, finger, and feel with the right dominant arm; he has no limit on use of the left arm. AR 18-19. He should also avoid concentrated exposure to extremely loud noise, vibrations, and hazards such as unprotected heights. AR 18-19. Plaintiff cannot perform his past relevant work, but ultimately, the ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy. AR 23-25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the

evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff contends that the ALJ erred in: (1) developing the record; (2) weighing the medical evidence; (3) assessing the credibility of his subjective complaints and the statements of his wife; (4) considering his need to raise his legs and the impact of his medication side effects; and (5) finding that he could perform jobs that exist in the national economy. (Doc. 18 at 10-20). As discussed further below, there is no merit to Plaintiff's list of grievances. The Commissioner's final decision was based upon substantial evidence and free of reversible error.

**1.     The ALJ Fully and Fairly Developed the Record**

Plaintiff's first contention is that the ALJ did not fully and fairly develop the record. Specifically, Plaintiff argues that Dr. Beezy, the independent medical examiner who testified at the hearing, repeatedly mentioned that many of Plaintiff's medical records from his 2005 Workers' Compensation claim were missing from Plaintiff's file. According to Plaintiff, because Dr. Beezy

did not have the benefit of many of the pertinent medical records the ALJ should have sent Plaintiff for "an updated consultative examination." (Doc. 18 at 11).   This is not so.

While the ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence, such a duty does not require that the ALJ go out and obtain the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).   The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *See id.* (*citing Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)).

Insofar as Plaintiff contends that the ALJ should have developed the record concerning the missing Workers' Compensation records, this contention is unavailing for several reasons. First, by allowing Plaintiff to supplement the record, the ALJ faithfully discharged any duty she may have had to develop the record.   Specifically, during the administrative hearing, the ALJ questioned Plaintiff about why the workers' compensation records were missing and whether there existed additional treatment records from his 2005 accident.   AR 387.   The ALJ urged counsel to supplement the record but in the interim attempted to question Plaintiff during the hearing about the types of physicians he saw during that time period.   AR 386.   The ALJ subsequently held the record open for two weeks so that Plaintiff could submit the missing records, and then obtained those records before issuing her decision.   AR 388.   The ALJ complied and conformed with the duty to develop the record.

Second, nothing required the ALJ to specifically obtain another opinion from a physician opining on Plaintiff's condition in light of the fully developed medical record. There is nothing to suggest that an updated medical examination would produce a different outcome based on treatment notes occurring nine years before the administrative hearing. The record includes comprehensive examinations from two different consultative examiners. Those examinations occurred well after Plaintiff's 2005 accident and demonstrated a current picture of Plaintiff's impairments and limitations. The record was therefore sufficiently developed so as "to allow for proper evaluation of the evidence" by the ALJ. *See Tidwell*, 161 F.3d at 602 (any duty to develop the record was satisfied

where ALJ kept record open so claimant could supplement her doctor's report); s*ee also Lenex v. Colvin*, No. 1:15-CV-00581-BAM, 2016 WL 5404437, at *4 (E.D. Cal. Sept. 27, 2016) (same). Accordingly, the ALJ fully met her duty to fully develop the record. It was Plaintiff's burden, not that of the ALJ, to prove his entitlement to disability. He failed to do so, and, even in this appeal, nothing counsel has provided or pointed to indicates that the ALJ's decision is unfounded or in error.

**2.     The ALJ Properly Weighed the Medical Evidence**

Plaintiff next argues that the ALJ failed to adequately weigh the medical evidence. Without pointing to any specific evidence, Plaintiff contends that the ALJ's reasons for rejecting the opinions of independent medical examiner, Dr. Beezy, and treating physician Dr. Al-Nahhal were improper. The Commissioner responds that the ALJ properly weighed the evidence that overwhelmingly demonstrated that Plaintiff was not disabled.

**A.     Legal Standard**

Courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.*; s*ee also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The ALJ may reject the opinion of a physician by

setting forth "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

**B.     Dr. Al-Nahhal- Treating Physician**

Plaintiff's treating physician, Ramy Al-Nahhal, M.D., completed two Medical Source Statements on March 7, 2014. AR 308-10, 311-14. Dr. Al-Nahhal opined that Plaintiff had no limitations in understanding, remembering, and carrying out short, simple instructions; slight limitations in understanding, remembering, and carrying out complex instructions, and in interacting with the public, supervisors, and co-workers. AR 308-09. He opined that Plaintiff had moderate limitations in responding to work pressures and changes in routine.  AR 308-09. Plaintiff could carry less than 10 pounds with his left hand; he could stand and walk for less than 2 hours in an 8-hour workday; he could sit for up to 6 hours in an 8- hour workday.  AR 311-14.

After considering Dr. Al-Nahhal's opinion, the ALJ provided specific and legitimate reasons for rejecting that treating opinion in favor of other substantial evidence in the record. Initially the ALJ observed that "there [were several problems with [Dr. Al-Nahhal's opinion]."  AR 23. After the ALJ listed several vagaries in Dr. Al-Nahhal's opinion, he identified three specific and legitimate reasons for rejecting his opinion.

First, the ALJ found that Dr. Al-Nahhal's opinion was unsupported and inconsistent with the evidence of record.  As examples, the ALJ first noted that Dr. Al-Nahhal "did not explain a basis for limiting [Plaintiff's] use of both his hands" despite ample evidence that Plaintiff suffered from limitations in only one hand.  AR 23.  The record indicates that while Plaintiff and his wife Maribel consistently stated that Plaintiff had difficulties with his right hand, there was little to suggest that Plaintiff experienced problems with his left hand.  AR 121-122; 207-209.  Indeed, an examination of Plaintiff's left hand revealed that he had full grip and upper extremity strength on his left side. *see* AR 208-09.  Dr. Al-Nahhal's findings with respect to Plaintiff's bilateral hand limitations were therefore inconsistent with objective evidence in the record. As another example, the ALJ found that Dr. Al-Nahhal's diagnosis of a traumatic brain injury undermined his overall opinion as there was no evidence or allegation of brain trauma.  Plaintiff's accident occurred in 2005. In 2006, an MRI of Plaintiff's brain was "unremarkable." AR 352.    Plaintiff did not and has not alleged any other possible head related injuries beyond his work related fall in 2005.   Dr. Al-Nahhal's findings with

respect to a disabling head injury were therefore wholly unsupported by any evidence in the record. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record. *Thomas*, 278 F.3d at 95 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Second, the ALJ discounted Dr. Al-Nahhal's opinion because Dr. Al-Nahhal overly credited Plaintiff's subjective statements regarding pain and other symptoms. As addressed in more detail below, the ALJ found that Plaintiff's complaints lacked credibility. An "ALJ may reject a treating physician's opinion that is based to a large extent on a claimant's own accounts of symptoms and limitations where those subjective complaints have been properly discounted by the ALJ." *See Tonapetyan*, 242 F.3d at 1149 ("ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (same). In this case, the ALJ found Plaintiff's testimony lacked credibility; accordingly, Dr. Al-Nahhal's opinion based on Plaintiff's unreliable complaints warranted less weight. AR 22.

Finally, the ALJ questioned Dr. Al-Nahhal's conclusions about Plaintiff's mental impairments as Dr. Al-Nahhal did not appear to have any specialized psychiatry experience.  AR 22. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given.  *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007).  Those factors include the specialty of the physician providing the opinion. *Id.* at 632. The medical records submitted by Dr. Al-Nahhal demonstrated that he performed physical, not psychological treatment of Plaintiff.  The ALJ therefore reasonably concluded that the doctor was not a specialist in psychiatry. AR 23, 241-307; 308-310.  This was a valid reason to favor the opinion of the mental health specialist over Dr. Al-Nahhal's opinion on Plaintiff's alleged mental impairments and limitations. AR 23.  *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (opinion of doctor who specializes in the relevant field is entitled to greater weight).

The ALJ therefore did not err in rejecting Dr. Al-Nahhal's opinion.

**B.      Dr. Beezy – Nonexamining Physician**

With respect to Dr. Beezy's expert testimony, the ALJ was not, as Plaintiff suggests, required to give greater weight to Dr. Beezy's nonexamining opinion over other substantial evidence in the record.  *See Orn*, 495 F.3d at 631 ("Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians.").

As explained earlier, Rueben Beezy, M.D. testified at the March 4, 2014 hearing.  AR 408-14.  He thought Plaintiff's case file was missing Worker's Compensation records from Plaintiff's accident in 2005, but he diagnosed several impairments based on the existing records.  AR 409.  Overall, he opined that based on Plaintiff's subjective complaints at the hearing, Plaintiff would be limited in his ability to sustain full-time work.  AR 410-11.

In order to reject the opinion of a non-examining physician, the ALJ need only reference specific evidence in the record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Here, the ALJ properly discounted Dr. Beezy's opinion because (1) it was an outlier among the rest of the medical evidence; (2)  Dr. Beezy admitted that he based his opinion largely on Plaintiff's subjective testimony and not the medical evidence of record; and (3) the treatment notes underlying Dr. Beezy's opinions were from Plaintiff's physician assistant, and not an acceptable medical source. AR 22.

Although the ALJ cited several reasons, most significant among them was the ALJ's citation to evidence that Dr. Beezy's findings were a recital of Plaintiff's testimony.  AR 22.  When Dr. Beezy was asked by the ALJ "can you give me an opinion of what you think [Plaintiff's] functional limitations are physically," Dr. Beezy responded "after listening to his symptoms this afternoon, I would say that he is severely limited and that it seems that what he says is less than sedentary." AR 410.   The ALJ noted that Dr. Beezy's findings were almost exclusively based on Plaintiff's testimony that the ALJ found lacked credibility.  This necessarily undermined the opinion of Dr. Beezy as it is well established that an ALJ may give an opinion less weight when it is based on a claimant's appropriately discredited subjective statements. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible").

Supporting this conclusion, the ALJ cited evidence that Plaintiff shops, sees friends, and goes to some of his children's school events.  AR 21.  The ALJ determined that Plaintiff's ability to engage in these activities did not support Dr. Beezy's finding that Plaintiff is "severely limited to a less than sedentary level."  AR 22.   *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (holding that physician's opinion may be disregarded if it is based on subjective complaints that have already been discredited).

Therefore, the ALJ did not err in rejecting Dr. Beezy's opinion because it is based to a large extent on Plaintiff's self-reports that had already been discounted as incredible. *Tommasetti*, 533 F.3d at 1041.

### C.    Substantial Evidence in the Record

Overall, the ALJ credited the substantial evidence in the record as provided by the examining and reviewing physicians in deciding to give less weight to the opinions of Drs. Al-Nahhal and Beezy.  On April 14, 2011, Dr. Hirokawa performed a psychiatric consultative examination. AR 201-04.  Based on this examination, Dr. Hirokawa found Plaintiff lacked a psychiatric condition and opined that Plaintiff had no work-related limitations. AR 204.   On April 22, 2011, Dr. Dozier performed an internal medical consultative examination.  AR 207.  Post examination, Dr. Dozier opined that Plaintiff could perform light work with appropriate limitations.  AR 210.  Although Plaintiff asserts that the Court should not consider the opinions of the physical and mental examining physicians to be substantial evidence because "they cite no specific evidence or tests relied upon," Plaintiff ignores that these opinions were based upon independent clinical examinations of Plaintiff. Consequently, Drs. Hirokawa and Dozier's examining opinions are substantial evidence in support of the ALJ's determination. *Tonapetyan*, 242 F.3d at 1149 (explaining an examining physician's opinion is substantial evidence if "it rests on his own independent examination").

Moreover, the State agency reviewing physicians collectively concurred that Plaintiff did not have a severe mental impairment and he could perform light work with some postural and environmental limitations. AR 224, 232-240.  Because the assessments of the State agency reviewing physicians were consistent with the opinions of the examining physicians, they are also substantial evidence in support of the record. *See Tonapetyan*, 242 F.3d at 1149 (opinions of non-

examining physicians may be substantial evidence when "consistent with other independent evidence in the record.").

Plaintiff is not entitled to remand on this issue.

**3.      The ALJ Properly Discounted the Subjective Symptom Testimony**

**A.      Plaintiff's Testimony**

Plaintiff next argues that the ALJ erred by impermissibly dismissing his subjective pain testimony.  Specifically, Plaintiff contends that the ALJ's conclusions regarding his conservative medical treatment and inconsistent testimony were not sufficient.  (Doc. 18 at 15-17).

"Where, as here, an ALJ concludes that a claimant is not malingering, and that []he has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'"  *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d at 1195-97).

The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039.

In finding that Plaintiff's subjective complaints were less than fully credible, the ALJ provided four reasons as follows: (1) Plaintiff's medical treatment has been conservative and fairly minimal since the alleged onset date; (2) Plaintiff provided inconsistent statements about his side effects, musculoskeletal complaints, and the nature of his injury; (3) Plaintiff had an unexplained

failure to seek medical treatment for eight months; and (4) his daily activities exceeded his alleged limitations.  AR 21.

At the outset, the Court notes that Plaintiff made no attempt to dispute the factual assertions regarding his eight-month gap in treatment outlined by the Commissioner and the ALJ. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); *Dominguez v. Colvin*, 2016 U.S. Dist. LEXIS 112530 (C.D. Cal. Aug. 23, 2016) (agreeing with Commissioner that ALJ made permissible inferences regarding intensity and persistence of symptoms based on amount and type of treatment, and that Plaintiff failed to dispute the factual assertions regarding an over five-month gap in treatment).  This was a clear and convincing reason to discount Plaintiff's credibility. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (ALJ properly considered treatment gap in assessing claimant's credibility).  It is settled law that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to bear on a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  Without explanation, Plaintiff did not seek treatment between January and August 2013.  AR 262-65.  Subsequently, Plaintiff's treatment after August 2013 was minimal and conservative.  This extended failure to seek treatment when Plaintiff alleged he was disabled undermines Plaintiff's allegations of debilitating pain.

Had this been the only reason given, this alone would have been sufficient to support an adverse credibility determination. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008).  The Court, however, further concludes that the ALJ supported her credibility finding with additional clear and convincing reasons by referring to Plaintiff's inconsistent statements about the severity of his symptoms. The ALJ noted that Plaintiff "has been inconsistent about the extent of the work-related injury he had.  He told the agreed medical examiner he had fallen about 20 feet [but] he testified he fell off a 50 foot tank."  AR 21. While Plaintiff argues that these statements are consistent because Plaintiff could fall 20 feet from a 50-foot tank, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).  The ALJ could reasonably consider that these inconsistent statements were an attempt to exaggerate his

symptoms, therefore undermining his credibility.  Given this discrepancy, the ALJ could reasonably conclude that Plaintiff's statements were not entirely reliable. AR 21. *Alonzo v. Colvin*, 2015 U.S. Dist. LEXIS 122298, 2015 WL 5358151 at \*17 (E.D. Cal. Sept. 11, 2015) (one inconsistent statement "comprised a clear and convincing reason to discount Plaintiff's credibility").  The ALJ further detailed that Plaintiff testified about side effects and disabling back/neck pain, yet his treatment records demonstrated he reported no side effects, only occasionally referred to musculoskeletal complaints, and he often reported at doctor's visits that he was feeling well and doing all right. These inconsistent statements along with their inconsistency with the objective medical evidence were an additional reason to reject Plaintiff's credibility.

The ALJ provided at least two clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility. *See Carmickle*, 533 F.3d at 1163; *Batson*, 359 F.3d at 1197 (finding that striking down one or more justifications for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record).  Therefore, even if Plaintiff's other allegations are truly error; the articulated reasons discussed here must lead the Court to affirm the ALJ's adverse credibility decision.  Plaintiff's challenge on this ground fails.

### B.    Plaintiff's Wife's Testimony

Plaintiff also argues that the ALJ erred by discounting the lay testimony of his wife, Maribel. (Doc. 18 at 14-15).  An ALJ must take into account competent lay witness testimony.  *Molina*, 674 F.3d at 1114; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted).

Here, the ALJ considered the third-party statement of Plaintiff's wife and discounted this statement because "it was a lay opinion based upon casual observation, rather than objective medical testing" and "potentially influenced by loyalties of family."  AR 23.  Ultimately, however, the ALJ found that the lay witness testimony was not "persuasive for the same reasons [the ALJ found that Plaintiff's] allegations are not wholly credible."  AR 23.

Plaintiff correctly asserts that the ALJ erred by discounting the third-party statements as potentially biased based on the familial relationship.  The mere fact that a lay witness is a relative of

14

the claimant cannot be a ground for rejecting the witness's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999).  Nonetheless, the Court finds this error harmless because the ALJ also determined that the third-party statement essentially reaffirmed Plaintiff's allegations that were not wholly credible. AR 23.  Where, as here, the ALJ gives valid reasons for rejecting Plaintiff's testimony, this is sufficient to support a finding that the lay witness testimony also is not credible. *Molina*, 674 F.3d at 1122 (if ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness); *Price v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 26399, 2017 WL 735732, at *12-3 (E.D. Cal. Feb. 24, 2017) ("If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible.").

For this reason, the Court finds that the ALJ did not err in evaluating the third-party statements of Plaintiff's wife.

**4.    Medication Side Effects**

Next, Plaintiff asserts that the ALJ failed to properly assess the side effects of his medications and his need to "sit with his legs raised." (Doc. 18 at 18).

An ALJ is required to consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993). Side effects not "severe enough to interfere with [a claimant's] ability to work" are properly excluded from consideration. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001). The plaintiff ultimately bears the burden of demonstrating that his use of medications caused a disabling impairment. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).

There is no merit to Plaintiff's contention that the ALJ failed to consider the purported side effects from his medications.  The ALJ properly discounted Plaintiff's claim that he experienced dizziness and blurry vision from his medications, noting that Plaintiff's records repeatedly indicated that his medications caused no side effects. (AR 21, *see, e.g.*, 241, 245, 252, 255, 259). Moreover, Plaintiff testified that when he told his physician that his medication caused blurry vision, he was ultimately advised to get glasses. AR 384-85. There is no evidence to indicate that Plaintiff experienced side effects that had a significant impact on his ability to work. *See Miller*, 770 F.2d at

15

849 ("[claimant] produced no clinical evidence showing that narcotics use impaired his ability to work. Accordingly, the ALJ properly rejected [his] claim").

To the extent that Plaintiff argues that the ALJ should have credited his "need" to raise his legs while sitting, Plaintiff's argument is equally meritless. The sole evidence regarding this supposed limitation is Plaintiff's statement at the hearing that he sits in a "Lazy Boy" recliner with his legs raised while watching television. AR 403-04. Plaintiff himself did not testify to any "requirement" that he raise his legs while seated. AR 403-04. Rather, in response to a question from his attorney, Plaintiff simply agreed that he elevated his legs when sitting in his "comfortable chair." AR 403. Further, no physician mentioned, nor recommended, any such limitation in Plaintiff's treatment records. Although Plaintiff makes a passing reference that this limitation finds support in the opinions of his physicians, he does not cite to any medical evidence to support his claim and the Court can find none. Given that the record is virtually silent with respect to Plaintiff's need to elevate his legs while sitting, the Court finds no error in the ALJ's analysis in this regard.

**5.     Step Five Analysis**

Finally, Plaintiff contends that the ALJ failed to include certain physical limitations when determining whether Plaintiff could perform the jobs of usher, counter-clerk and investigator dealer accounts. (Doc. 18 at 19-20). According to Plaintiff, based on his poor eyesight and diminished hearing it is unlikely that he can perform any of these positions. The Court disagrees.[3]

Plaintiff does not argue that the ALJ erred at Step Five because the hypothetical posed to the VE failed to include all the limitations found in the RFC. Instead, Plaintiff argues that because the ALJ did not include certain eyesight and hearing limitations in the RFC, the Step Five analysis is flawed. Because, substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record'"); *Osenbrock*, 240 F.3d at 1165 ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record").

---

[3]       Plaintiff also argues that the ALJ incorrectly stated that he was "36 years old," when he was in fact 45 years old at the time of the hearing. (Doc. 18 at 19). The ALJ's error in this regard is harmless. The ALJ correctly characterized Plaintiff as a younger individual aged 18-49 as of his alleged disability onset date. AR 24; see 20 C.F.R. § 404.1563.

1

2

Moreover, Plaintiff's contention that his poor eyesight and hearing prevented him from performing work essentially restates his argument that the ALJ improperly discredited his testimony

3

regarding the limiting effects of his symptoms. Although Plaintiff argues for a different reading of

4

the record, the ALJ's interpretation of the evidence was rational and should be upheld. *See*

5

*Tommasetti*, 533 F.3d at 1038. On this record, the reliance by the ALJ on the vocational expert's

6

testimony was proper.

7

## CONCLUSION

8

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

9

evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

10

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

11

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin,

12

Acting Commissioner of Social Security and against Plaintiff, Jose Mojarro.

13

14

IT IS SO ORDERED.

15

Dated:   **March 29, 2017**                    /s/ *Barbara A. McAuliffe*

16

UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28